IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARLA BOLT, individually, and as the Personal Representative of the ESTATE OF MIA ROSE PHILLIPS, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 04-0241-CV-W-ODS |
| TROUTMAN TRANSPORTATION and ESTATE OF JAMES C. BARNETTE, Deceased, | ) ) ) ) | |
| Defendants. | ) | |

ORDER AND OPINION (1) APPROVING AMOUNT OF SETTLEMENT AND (2) DIRECTING DISBURSEMENT OF SETTLEMENT PROCEEDS

This is a wrongful death action[1] filed by Marla Bolt following the death of her daughter, Mia Rose Phillips. A hearing to approve the parties' settlement was held on November 14, 2005. Following the hearing, the Court solicited and received additional materials.

In addition to Ms. Bolt, Ms. Phillips is survived by her father (John Phillips), her husband (Fernando Hernandez), and her daughter (T.R.H.). Ms. Phillips was born in May 1982 and was killed in a vehicle accident in November 2003. She was a passenger in a tractor-trailer driven by James C. Barnette and owned by Troutman Transportation.

Plaintiff was born in Michigan in May 1982, but was removed from her home at the age of nine because she was subjected to abuse. Ms. Bolt provided contradictory (and, in some respects, implausible) testimony regarding the identity of her daughter's

---

[1]On several occasions, the Court has questioned Ms. Bolt's authority to act for her daughter's estate. The Court's questions have never been answered. This state of confusion combined with the lack of any indication the estate actually has a claim persuades the Court to dismiss the estate.

abuser,[2] but this information is not relevant to the outcome of these proceedings.  Ms. Bolt remained in the care and custody of the State of Michigan until she was 17; Ms. Bolt saw her daughter once a week during that time.  Upon reaching age 17 in May 1999 and being released from the state system, Ms. Phillips moved to Texas.  She did not move in with her mother because Ms. Bolt's then-husband would not allow her to do so.  Ms. Bolt visited her daughter in Texas on three occasions, but was not there when T.R.H. was born.  Ms. Phillips occasionally received financial assistance from her father (who was living in Texas at the time) and also occasionally lived in his house.  Ms. Philips did not obtain financial assistance from Ms. Bolt, nor did she provide her with any.  At some point Ms. Phillips returned to Michigan and lived with Ms. Bolt for two months, then went back to Texas.

Ms. Phillips married Mr. Hernandez in Texas in November 1999, and T.R.H. was born in April 2000.  Mr. Hernandez has not been a constant figure in T.R.H.'s life; in fact, he had been separated from Ms. Phillips for quite some time and (according to Ms. Bolt) divorce proceedings were contemplated if not initiated.  The Court attempted to contact Mr. Hernandez during the hearing, but he was not at the number he provided his attorney.

When T.R.H. was an infant, she was seen in the emergency room for what was determined to be a lacerated pancreas.  It was believed her injuries were the result of abuse, and Texas Child Protective Services (CPS) took custody of T.R.H. for approximately two months.  CPS took custody of T.R.H. again in September 2003 after the child was found wandering in the street without supervision.  T.R.H. was still in CPS' care and custody at the time of Ms. Phillips' death.  Mr. Hernandez has relinquished his parental rights and adoption proceedings are ongoing in Texas; these proceedings

---

[2]For instance, Ms. Bolt testified authorities believed her son (Ms. Phillips' brother) had molested Ms. Phillips.  At other times, she intimated that John Phillips was responsible.  However, even after John Phillips and her son moved away in 1995, Ms. Phillips was not allowed to return to Ms. Bolt's home.

2

Case 4:04-cv-00241-ODS   Document 78   Filed 12/20/05   Page 2 of 7

appear to have started after Ms. Phillips' death, and it is not clear whether they would have commenced had she not died.

While this suit was pending, Defendants initiated settlement discussions with CPS on T.R.H.'s behalf. The parties agreed to a settlement in the amount of $100,000, and the settlement has recently been approved by the Texas state court. The parties now wish to settle this case for $70,000. In an Order issued November 8, 2005, the Court advised the parties of its preliminary view that it should treat this as a case in which the total settlement is $170,000, and that the issues to be decided were (1) whether this was an appropriate amount to settle the wrongful death claims and (2) how the money should be apportioned amongst all the "tier one" claimants described in section 537.080.1(1) of the Revised Missouri Statutes. The Court premised this conclusion on provisions of Missouri law dictating that "[o]nly one action may be brought . . . against any one defendant for the death of any one person." Mo. Rev. Stat. § 537.080.2. The fact that Defendants eschewed a portion of the protection this subsection provides by initiating a separate settlement with T.R.H. did not alter the Court's obligations under the statute to consider all of the potential claimants in conducting the inquiries required by the statute. The Court further indicated that the $100,000 paid to T.R.H. in the Texas proceedings would be treated as a "credit" towards any amount to which she was entitled out of the $170,000 settlement total. In other words, while only $70,000 is available for this Court to disburse, the Court's inquiry must consider the fact that (1) T.R.H. is an eligible claimant and (2) Defendants have paid, and T.R.H. has received, $100,000. The parties agreed with the Court's analysis.

With respect to the first issue, the Court concludes $170,000 is an adequate and appropriate amount to settle the claims of Ms. Phillips' parents, husband, and daughter. In reaching this decision, the Court has considered the factors specified in section 537.090. In particular, the Court observes T.R.H. has lost the "companionship, comfort, instruction, guidance, counsel, training, and support" of her mother; while one might justifiably and cynically wonder what value should be placed on these components in light of T.R.H.'s placement with CPS and uncertain future relationship with her mother, the

3

Court has no doubt that $170,000 is sufficient compensation for these factors as they relate to T.R.H. and the other tier one claimants. Accordingly, the Court concludes $170,000 is an appropriate amount to settle this case.

The second issue (which Defendants recognize does not involve them at all) is a bit more difficult to determine. The parties originally suggested the $70,000 at issue be divided equally between Ms. Bolt and Mr. Hernandez after payment of attorney fees. Then, on November 8, 2005, the Court received a letter directly from Ms. Bolt objecting to (1) payment of attorney fees out of the $70,000 and (2) payment of any sum to Mr. Hernandez. The Court's November 8 Order advised the parties of Ms. Bolt's letter and identified the problems it presented. During the hearing, Ms. Bolt re-confirmed that she agreed to the amount of the settlement and further testified that she and Mr. Hernandez had agreed to divide the money as follows: (1) 28,000 for attorney fees, (2) $10,000 for Mr. Hernandez, and (3) $32,000 for Ms. Bolt. The Court does not believe this division is appropriate.

The responsibility for ascertaining an equitable distribution lies with the Court; moreover, the distribution is to be "apportion[ed] . . . among those persons entitled thereto in proportion to the losses suffered by each," not just to those who are actually parties to the suit. Mo. Rev. Stat. § 537.095.3; see also id. § 537.095.1 ("Any settlement or recovery by suit shall be for the use and benefit of those who sue or join, *or who are entitled to sue or join*, and of whom the court has actual written notice." (emphasis supplied)); Kavanaugh v. Mid-Century Ins. Co., 937 S.W.2d 243, 245 (Mo. Ct. App. 1996). "The duty and responsibility of apportionment of losses in a wrongful death action lies within the sound discretion of the trial court." Parr v. Parr, 16 S.W.3d 332, 336 (Mo. 2000) (en banc). "The trial court is not bound by a set percentage or a minimum; rather, the trial court must exercise its discretion and, as instructed by the statute, distribute the proceeds in proportion to the losses suffered by each as determined by the court." Id. at 337 (quotation omitted).

Mr. Hernandez should not receive any proceeds. He was separated from Ms. Phillips at the time of her death and there was no apparent prospect for reconciliation.

4

To the contrary, the record reflects that divorce proceedings were pending.[1] Mr. Hernandez also was not available for inquiries on the matter, despite his lawyer's assurances he had advised Mr. Hernandez of the date and time for the hearing and that Mr. Hernandez agreed to be available. The Court does not believe the relationship between Mr. Hernandez and Ms. Phillips justifies an award of any sum to him.

The Court awards Mr. Phillips the sum of $2,500. The record reflects Ms. Phillips maintained a certain degree of contact with her father after she attained the age of 17; she moved to Texas, lived near (and at times, with) him, and obtained some financial assistance from him. This suggests a relationship between father and daughter that justifies allowing Mr. Phillips some compensation for the loss of his daughter's companionship.[2]

The Court awards Ms. Bolt the sum of $10,000. For a period of almost ten years – from the ages of nine and 17 – Ms. Phillips saw her mother once a week. Upon reaching age 17, she was denied the opportunity to live with her mother because her step-father did not want her living in the house. Ms. Phillips moved to Texas where she was visited by her mother on three occasions between 1999 and 2003. There is no evidence of communications or anything else establishing a relationship between Ms. Bolt and Ms. Phillips. When asked why she thought she was entitled to the compensation she sought, Ms. Bolt responded that she needed money to pay bills – and to clarify, she was not referring to funeral, medical, or other expenses associated with her daughter's death. The Court does not believe Ms. Bolt's relationship with her daughter was such that a larger award is justified, particularly in comparison to T.R.H. who (1) may have been

---

[1] The evidence on this point came from Ms. Bolt's testimony. The same attorney represented both Ms. Bolt and Mr. Hernandez, so the Court is confident counsel would have corrected Ms. Bolt's statements if there were any errors in this aspect of her testimony.

[2] The Court acknowledges Ms. Bolt's intimations that Mr. Phillips was involved in the events that led to Ms. Phillips being removed from the home in 1991. The evidence is vague and at most represents Ms. Bolt's speculations.

5

reunited with Ms. Phillips and (2) has now lost any opportunity for a relationship with her mother.

The Court awards the remaining $57,500 to T.R.H., making her total award (including what she received in the Texas proceeding) $157,500. The Court believes this sum is adequate compensation for T.R.H. in light of the factors described in section 537.090.

The next matter to be addressed is attorney fees. Counsel seeks an award of 40%, but boldly asks for 40% of the full $170,000, not the $70,000 he was responsible for bringing to the settlement. Counsel's justification escapes the Court; the Court does not credit Counsel's comment that he "brought to light" T.R.H.'s existence. To the contrary, his client was obliged to advise the Court of her existence. Moreover, Counsel's intimation that he played a role obtaining $100,000 for T.R.H. is belied by the record, including (1) the records from the Texas proceedings and (2) Counsel's own billing statements.

The Court has reviewed counsel's billing statement to insure that a 40% award is reasonable. The Court is unable to confirm the reasonableness of the 40% figure because there is insufficient information contained in the billing statement. For instance, Counsel documents time discussing the case with a great many people whose connection to the case is unclear. This does not mean that these conversations were not necessary and reasonable; it means the Court cannot confirm they were. Discovery in this case closed in May 2005 and Counsel issued written discovery requests, but he did not conduct any depositions or obtain an expert's report.[3] He conducted research on probate law and prepared the filings related to Plaintiff's Motion to Enjoin Settlement, but neither endeavor proved fruitful in this case.

To clarify, the Court does not criticize Counsel's decisions regarding discovery. However, they are relevant considerations in evaluating his request for compensation

---

[3]According to his billing statement, Counsel did not receive Defendants' settlement offer until July 27, 2005, so these decisions during discovery could not have been based on the prospect of settlement.

6

amounting to 40% of the award. The record, including Counsel's billing statement, does not suggest this award would be reasonable. The Court awards Counsel fees in the amount of $20,000.

Counsel is also entitled to an award of costs. Like the time entries, these items are not explained very well. The Court will allow the $850 expense for "Retainer," presuming that it refers to a retainer paid to local counsel. However, the Court will disallow the entry for "On Account of Fees and Disbursements" because the Court has no idea what that means. Counsel will be awarded costs in the amount of $2,819.48. The Court does not believe the amounts apportioned to Ms. Phillips' parents should be reduced further, so Counsel's fees and costs will be deducted from the portion earmarked for T.R.H.. Thus, the $70,000 will be divided as follows:

- Marla Bolt $10,000.00
- John Phillips $ 2,500.00
- T.R.H. $34,680.52
- Legal Fees/Costs $22,819.48

Defendants are directed not to make any payments until after the time for appealing has passed and this Order becomes final.

Finally, the manner of payment to T.R.H. must be addressed. T.R.H. is a minor, and the order in the Texas case indicates that in lieu of establishing a trust a series of annuity contracts were purchased. The contracts pay sums during the course of T.R.H.'s life, but not until after she reaches the age of majority. (Of course, the present value of those annuities equals $100,000). The undersigned will heed the Texas court's judgment that establishing a trust is not advisable. Instead, Defendants are instructed to obtain an annuity that will pay T.R.H. an amount equal to the present value of $34,680.52 in three equal installments payable on her 18th, 22nd and 28th birthdays.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: December 20, 2005   UNITED STATES DISTRICT COURT